1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO ASSOCIATION OF REALTORS, INC.,

Plaintiff,

v.

SANDICOR, INC.; NORTH SAN DIEGO COUNTY ASSOCIATION OF REALTORS; and PACIFIC SOUTHWEST ASSOCIATION OF REALTORS,

Defendants.

Case No.:  16CV96-MMA (KSC)

**NOTICE AND ORDER PROVIDING TENTATIVE RULINGS**

 [Doc. No. 54]

Plaintiff has filed a Third Amended Complaint (TAC) in this action.  Doc. No. 52.

Defendants North San Diego County Association of Realtors ("NSDCAR") and Pacific

Southwest Association of Realtors ("PSAR") (collectively, the "Association

Defendants") move to dismiss Plaintiff's claims under the Sherman Act, 15 U.S.C. § 1,

and the California Cartwright Act, Business & Professions Code §§ 16600 *et seq.*,

pursuant to Federal Rule of Civil Procedure 12(b)(6).  Doc. No. 54.  The motion is set for

hearing on Monday, December 19, 2016 at 2:30 p.m. in Courtroom 3A.  Having

considered the submissions of the parties, and in anticipation of Monday's hearing, the

Court issues the following tentative rulings.

## I.   Defendants' Motion to Dismiss

The Court tentatively **DENIES** the Association Defendants' motion to dismiss. Considering Plaintiff's additional allegations, the Court tentatively concludes that Plaintiff now adequately alleges a conspiracy, combination, or agreement in accordance with the pleading standards delineated in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007).  *Twombly* requires a plaintiff plead more than "parallel conduct and a bare assertion of conspiracy" to allege a plausible claim under section 1 of the Sherman Act. *Id.* at 556.  Allegations "must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action."  *Id.* at 557; *see also In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 (9th Cir. 2015) ("Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient.") (internal quotations omitted).  A plaintiff must plead "something more, some further factual enhancement, [or] a further circumstance pointing toward a meeting of the minds."  *In re Musical Instruments*, 798 F.3d at 1193 (internal quotations and citations omitted).  The Ninth Circuit has "distinguished permissible parallel conduct from impermissible conspiracy by looking for certain 'plus factors.'"  *Id.*  "[P]lus factors are economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action."  *Id.*

Previously, regarding the Second Amended Complaint, the Court had held that Plaintiff "failed to plead context suggesting an agreement between the Association Defendants to carry out their allegedly unlawful conduct or 'plus factors' inconsistent with unilateral conduct."  *See* Doc. No. 50.  Rather, the Court found that the SAC merely described parallel conduct and conclusions of a conspiracy.  In the TAC, while Plaintiff might not plead conduct that is necessarily inconsistent with unilateral conduct, Plaintiff has described a setting that pushes its allegation of a combination, conspiracy, or agreement across the line from "possible" to "plausible."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a 'probability requirement,' but

it asks for more than a sheer possibility that a defendant has acted unlawfully."). Specifically, Plaintiff alleges additional context regarding the Association Defendants' relationship, both historically and presently.  For example, Plaintiff alleges that the Association Defendants attempted to merge around 2011, but NSDCAR's members did not approve the merger.  TAC ¶ 66.  Since then, Plaintiff alleges the Association Defendants have "aligned their respective committees and committee responsibilities, and convened joint committee meetings to ensure each association was acting the same as the other and to prepare for a potential future merger."  TAC ¶ 66.  The TAC states that the Association Defendants have provided joint services, such as joint caucus dinners, to their members, and have coordinated their marketing efforts and issued promotions "designed to harm Plaintiff."  TAC ¶¶ 67–68.  Plaintiff alleges they "regularly hold jointly marketed broker summits and symposiums" and the marketing materials often include both association's names, and Sandicor's.  TAC ¶ 68.  "Though the billed topics vary widely, nearly all such events include a discussion of 'the other association' [Plaintiff] and its efforts to take 'your [realtors'] data.'"  TAC ¶ 68.  The events are meant to persuade "brokerages, brokers, and other real estate professionals in San Diego County to cancel their memberships with Plaintiff."  TAC ¶ 68.  The Association Defendants also allegedly offered "transfer 'credits' for any dues or fees paid to Plaintiff if the broker leaves Plaintiff and joins PSAR or NSDCAR as their primary membership."  TAC ¶ 69.

Plaintiff alleges the Association Defendants recently "formalized" a "'shared services agreement,' under which 'access to many services, resources, and discounts offered by either Association will not be available to both PSAR and NSDCAR members irrespective of with which association they have their primary membership.'"  TAC ¶ 71. Plaintiff asserts that, according to Defendants' disclosure regarding the agreement, the agreement is an "expansion of a relationship between the two Associations that has been in effect since 2013."  TAC ¶ 71.  Such agreements are uncommon, Plaintiff urges, because they require "competing associations to share confidential membership records" which "could be used to recruit" the other association's members.  TAC ¶ 72.  For that

reason, Plaintiff alleges, the Defendants also recently entered into a market allocation agreement, agreeing not to recruit the other's members.

Further, upon information and belief, the TAC alleges, "Sandicor's board members are frequently ordered to vote in a particular way, in concert with the members of the other colluding association."  TAC ¶ 76.  Plaintiff alleges that the Association Defendants colluded to vote against Plaintiff's request for an unrestricted data feed, even when Plaintiff offered to pay for it, despite that Sandicor—an entity Plaintiff alleges the Association Defendants control—sells the same data to other third parties.  *See* TAC ¶¶ 84–86.  Also of import, Plaintiff clarifies that the Association Defendants' representatives who contacted Point2 to instruct it not to include their members' data did so not only at or around the same time as one another, but also using identical instructions.

After thoroughly reviewing Defendants' arguments in their motion to dismiss, the Court tentatively finds those arguments unpersuasive at this juncture.  For example, many of Defendants' arguments rely on facts not alleged in the TAC, which could be relevant at the motion for summary judgment stage, but are not properly considered upon a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Also, Defendants rely heavily on the idea that they have pointed to an obvious alternative explanation for their conduct—that they are competitors with Plaintiff and reacted in the same way to Plaintiff's request for an unrestricted MLS feed.  Defendants essentially argue that a plaintiff can never adequately allege a conspiracy under the antitrust laws where there is a logical explanation for some parallel conduct.  *See* Doc. No. 57, at 8:5–8 (arguing that "where an antitrust plaintiff's allegations do not *exclude* the obvious alternative explanation, they remain stuck in 'neutral territory' and are not plausible") (emphasis added).  However, the portion of *Twombly* that Defendants quote states in full, "[a] statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 [Sherman Act] claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory."  *Twombly*, 550 U.S. at 557.  Nowhere does

1   *Twombly* state that a plaintiff must exclude an alternative explanation; rather, a plaintiff

2   relying on parallel conduct (as opposed to some direct evidence of an agreement), must

3   provide a setting giving rise to a plausible conspiracy.  While the evidence may

4   ultimately weigh more heavily in favor of Defendants' explanation, it could also reveal

5   an illegal agreement.  "Asking for plausible grounds to infer an agreement does not

6   impose a probability requirement at the pleading stage; it simply calls for enough fact to

7   raise a reasonable expectation that discovery will reveal evidence of illegal agreement."

8   *Twombly*, 550 U.S. at 556.  "And, of course, a well-pleaded complaint may proceed even

9   if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

10  recovery is very remote and unlikely.'"  *Id.*  In sum, the Court tentatively concludes that

11  Plaintiff alleges significant coordinated action between Defendants, rendering plausible

12  Plaintiff's allegation of a conspiracy, combination, or agreement to deny Plaintiff an

13  unrestricted data feed.

14          Lastly, the Court tentatively finds Defendants' argument that Plaintiff has failed to

15  allege an unreasonable restraint of trade unconvincing.  Defendants argue Plaintiff fails to

16  allege "increased prices, reduced output, [or] reduced quality."  *See* Doc. No. 57.

17  Defendants contend Plaintiff fails to allege Defendants' conduct led to "reduced output of

18  the MLS data."  *See* Doc. No. 57.  However, Plaintiff pleads new allegations explaining

19  that Sandicor's web portal is difficult for consumers to use, whereas Just Knock was a

20  user-friendly and innovative way to provide consumers with both MLS data and

21  additional information, such as descriptions of neighborhoods.  *See* TAC ¶ 79 (stating

22  that using "Sandicor's portal," "broker members were able to access and use MLS listing

23  information (historical and current data), [but the portal] was not user-friendly and did

24  not have any additional value-added features for its brokers or clients").  Plaintiff was

25  never able to launch Just Knock, an allegedly superior portal for consumers, which

26  Plaintiff alleges was due solely to Defendants' refusal to allow Plaintiff an unrestricted

27  MLS feed.  Also, Plaintiff contends that it and the Association Defendants do not

28  compete for the MLS data itself—which all three entities acquire from Sandicor—but

rather, through the services and products they provide, such as Just Knock.  Accordingly, at this stage, the Court tentatively finds Plaintiff has sufficiently alleged an unreasonable restraint in the form of diminished quality of services or products.

Because Plaintiff alleges its California Cartwright Act claim rises and falls with its Sherman Act claim, and the Association Defendants do not dispute this, the Court tentatively **DENIES** the Association Defendants' motion to dismiss as to both of Plaintiff's antitrust claims.

## II.   Requests for Judicial Notice

The Association Defendants request the Court take judicial notice of a copy of a printout of Defendant PSAR's website depicting a July 1, 2016 announcement by PSAR and NSDCAR (but accessed on September 21, 2016).  *See* Doc. Nos. 54-2, 54-4, Exhibit 1.  Publically accessible websites may be judicially noticed on a motion to dismiss. *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014).  Plaintiff does not oppose this request, nor dispute the authenticity of the website printout.  Further, Plaintiff appears to refer to this announcement in the TAC.  *See* TAC ¶ 71.  Accordingly, the Court tentatively **GRANTS** Defendants' request.

Also, Plaintiff requests judicial notice of: (A) an announcement by Raylene Brundage, NSDCAR's 2016 President, and the NSDCAR Board of Directors, issued September 23, 2016; (B) an announcement by Anthony Andaya, 2016 PSAR President, issued September 23, 2016; and (C) a complaint for involuntary dissolution filed by NSDCAR and PSAR against Sandicor, Inc. on October 24, 2016.  *See* Doc. No. 56-1, Exhibits A–C.  While these documents may be of the type properly judicially noticed, all of them post-date the TAC, and thus, their only relevance would be in determining whether Plaintiff could amend its complaint to add facts to cure any deficiencies.  However, because the Court tentatively finds the TAC sufficiently states claims for violation of the antitrust laws, the Court tentatively **DENIES** Plaintiff's requests as moot, and without prejudice.

*//*

1

### III.   Plaintiff's Request for Discovery

Because the Court tentatively finds Plaintiff sufficiently states claims for antitrust violations, the Court **DENIES** Plaintiff's request for limited discovery, without prejudice, as moot.

### IV.   Conclusion

In sum, the Court tentatively **DENIES** the Association Defendants' motion to dismiss as to both of Plaintiff's antitrust claims, tentatively **GRANTS** Defendants' request for judicial notice, and tentatively **DENIES** Plaintiff's requests for judicial notice.  Counsel is advised that the Court's rulings are tentative and the Court will entertain additional argument at the hearing on December 19, 2016.


**IT IS SO ORDERED.**


Dated:  December 16, 2016

Hon. Michael M. Anello
United States District Judge