# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO ASSOCIATION OF REALTORS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SANDICOR, INC.; NORTH SAN DIEGO COUNTY ASSOCIATION OF REALTORS; and PACIFIC SOUTHWEST ASSOCIATION OF REALTORS,<br><br>Defendants. | Case No.: 16cv96-MMA (KSC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**<br><br>[Doc. No. 79] |

Before the Court is Plaintiff San Diego Association of Realtors, Inc.'s motion for leave to file an amended complaint. Doc. No. 79-1 ("Mtn"). Defendants North San Diego County Association of Realtors ("NSDCAR") and Pacific Southwest Association of Realtors("PSAR"), collectively, "Association Defendants," oppose Plaintiff's motion [Doc. No. 87 ("Ass'n Oppo")] and Defendant Sandicor, Inc. ("Sandicor") joined in the Association Defendants' opposition [Doc. No. 88 ("Sandicor Oppo")]. Plaintiff replied to Defendants' oppositions. Doc. No. 90 ("Reply"). The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 91.

## PROCEDURAL BACKGROUND

Plaintiff San Diego Association of Realtors ("Plaintiff" or "SDAR") filed this action on January 14, 2016, alleging several causes of action, including antitrust violations, against Sandicor and the Association Defendants. Doc. No. 1. Defendants

1

moved to dismiss certain claims in Plaintiff's original complaint, and Plaintiff filed a First Amended Complaint ("FAC"), rendering Defendants' motions moot. Doc. Nos. 13, 14, 18. In April 2016, Defendants again moved to dismiss some of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), and the Association Defendants also filed a motion for attorneys' fees. Doc. Nos. 24, 25, 26. After considering oral arguments of the parties, the Court granted in part and denied in part Defendants' motions to dismiss and denied the motion for attorneys' fees. Doc. Nos. 36, 37, 38. Specifically, the Court granted Defendants' request for dismissal of Plaintiff's antitrust claims, but allowed Plaintiff leave to amend. Doc. No. 38.

Plaintiff then filed a Second Amended Complaint ("SAC"), and the Association Defendants moved to dismiss Plaintiff's antitrust claims. Doc. Nos. 39, 40. After hearing oral argument from the parties, the Court affirmed its tentative rulings granting Defendants' motion to dismiss Plaintiff's antitrust claims and granting Plaintiff leave to amend. Doc. Nos. 50, 51. The Court dismissed Plaintiff's antitrust claims on the grounds that Plaintiff failed to allege a conspiracy, combination, or agreement in accordance with the pleading requirements under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Doc. No. 50. In other words, Plaintiff had merely alleged parallel conduct without "some further factual enhancement" that would "point[] toward a meeting of the minds." *In re Musical Instruments*, 898 F.3d at 1193. Plaintiff filed a Third Amended Complaint ("TAC") [Doc. No. 52] and the Association Defendants again moved to dismiss Plaintiff's antitrust claims. Doc. No. 54. On December 19, 2016, the Court denied the Association Defendants' motion to dismiss, concluding that Plaintiff had adequately alleged a conspiracy, combination, or agreement in accordance with the pleading standards delineated in *Twombly*. Doc. Nos. 58, 59.

On August 18, 2017, NSDCAR and PSAR filed an *ex parte* motion to compel Plaintiff to provide additional discovery responses to several Requests for Production of Documents. Doc. No. 76. Specifically, the Association Defendants sought information related to Plaintiff's company, Just Knock, from 2009 to 2014. *See* Doc. 78 at 6.

Magistrate Judge Karen S. Crawford explained, "[P]laintiff has since clarified that it began to devote resources to create Just Knock in 2014, and not 2009 as previously alleged. Plaintiff further clarified it channeled those efforts through its wholly owned subsidiary, ReAltitude, LLC, and that *all* relevant financial information pertaining to those efforts are embodied in the financial information of Just Knock, LLC." *Id.* at 7 (citations omitted) (emphasis in original). Judge Crawford further explained that Plaintiff "should seek to correct" the TAC in accordance with Plaintiff's representations. *Id.*

### FACTUAL BACKGROUND[1]

Plaintiff SDAR is an association of real estate brokers. TAC ¶ 4. Plaintiff was one of the founding shareholders of Defendant Sandicor. *Id.* Defendant NSDCAR is also an association of real estate brokers. TAC ¶ 5. It is a minority shareholder of Defendant Sandicor, with approximately 22% of Sandicor's outstanding shares. *Id.* Defendant PSAR is also an association of real estate brokers. TAC ¶ 6. It is a minority shareholder of Defendant Sandicor, with approximately 10% of Sandicor's outstanding shares. *Id.* Defendant Sandicor "was formed for the sole purpose of consolidating several different multiple listing services into one consolidated database." TAC ¶ 7. It is "a local cooperative owned by its shareholders: Plaintiff and the Association Defendants." TAC ¶ 25.

Plaintiff alleges the Association Defendants conspired to eliminate Plaintiff as a competitor. TAC ¶ 24. Plaintiff has the highest membership of all associations in the market for real estate brokers and salespersons in San Diego County. TAC ¶ 15. There used to be eleven realtor associations in San Diego County, but today there are only three—Plaintiff and the Association Defendants. *See* TAC ¶¶ 15, 16.

Sandicor was formed by the eleven broker associations in existence in San Diego County in 1991, including Plaintiff. TAC ¶ 16. The associations created Sandicor for

---

[1] The following facts are taken from the TAC.

one purpose—to "aggregate[e] the previous associations' separate [multiple listing services ("MLS")] to one centralized MLS with an online database accessible to all local brokers." *Id.* Sandicor compiles information regarding homes for sale in San Diego County, which it obtains from the member-brokers of the shareholder associations that must supply such information as participants of the MLS. TAC ¶ 17. Members of the component shareholder associations create their own MLS listings, which become part of the Sandicor MLS database that can be viewed by other real estate brokers who are either shareholders of Sandicor or subscribers to the MLS feed. *Id.* The database also includes "historical information regarding sold properties that is critical to analyzing property values and market comparables." *Id.*

"The MLS data is of fundamental value to Sandicor's shareholder associations." TAC ¶ 18. "The products and services of associations and third-party vendors rely on the integration of the MLS data feeds and other aspects of the MLS platform for nearly all of their utility." TAC ¶ 19. Plaintiff and the Association Defendants compete in the "innovation and implementation of these products and services." *Id.* Sandicor's shareholder associations are entitled to use the consolidated MLS data pursuant to its governing documents and the shareholder agreement. TAC ¶ 36.

Sandicor "has market power because it comprises 100% of the market for consolidated MLS data for San Diego County." TAC ¶ 27. Plaintiff and the Association Defendants are direct competitors. *Id.* In 1999, five associations, including Plaintiff and the Association Defendants, entered into the Shareholder Agreement. TAC ¶ 32. Today, only Plaintiff and the Association Defendants remain sharheolders, yet the Agreement's terms remain the same. TAC ¶ 32, 33. Pursuant to the Agreement, the Association Defendants together control Sandicor's board of directors, despite that they are minority shareholders. TAC ¶ 33. The board of directors is comprised of six directors, two appointed by each shareholder association. *Id.* For major corporate transactions, at least two shareholders must approve regardless of voting power accumulated through shares of stock. TAC ¶ 31. Further, a shareholder owning more than two-thirds of the shares may

veto proposals requiring shareholder approval. *Id.* Plaintiff holds more than two-thirds of Sandicor's stock (due to membership), but its directors only have four-elevenths of the voting power. TAC ¶ 33. PSAR's two directors have four votes total, and Plaintiff's two directors have four votes total. *Id.* Thus, Plaintiff cannot make major corporate decisions without the Association Defendants' approval, despite that it owns more than two-thirds of Sandicor. *Id.* Plaintiff has formally challenged some of Sandicor's actions, but Plaintiff's challenges have been ignored or bypassed. TAC ¶¶ 34, 35.

In 1999, Sandicor entered into a Service Center Agreement with Plaintiff, agreeing to provide "MLS-related support services to certain professionals in the real estate industry." TAC ¶ 36. The contract was amended and restated in 2004. *Id.* Plaintiff agreed to pay Sandicor monthly fees and Sandicor agreed to allow Plaintiff access to its MLS data to "download, use and distribute . . . for membership consumption and statistical purposes." *Id.*

In 2009, Plaintiff began developing an online product that would allow its members to provide clients "with access to a hyper-local community resource to assist in the home-buying process." TAC ¶ 39. The product was named Just Knock. *Id.* To operate, Just Knock requires "an unrestricted data feed." *Id.* "Plaintiff devoted substantial time and resources to create the web-portal, and was prepared to roll the service out in 2015 once it secured an unrestricted data feed to Sandicor's MLS database—including access to historical information." *Id.* Despite that Plaintiff "had a contractual right to download and use the data as well as the fact that Sandicor freely provided data feeds to requesting parties, often through third-party sources," "the Association Defendants, through their collective control at the director level for Sandicor and other means, combined to deny Plaintiff access to the data feed." *Id.*

Further, the Association Defendants "operate Sandicor to provide their respective associations with preferential treatment"—for example, "[r]equiring two 'logins' for any member who transfers associations, which discourages members from transferring and

5

16cv96-MMA (KSC)

disproportionately targets Plaintiff, as the attrition rate for the Association Defendants is remarkably higher than Plaintiff's." TAC ¶ 44.

Plaintiff alleges that the Association Defendants attempted to merge around 2011, but NSDCAR's members did not approve the merger. TAC ¶ 66. Since then, the Association Defendants have "aligned their respective committees and committee responsibilities, and convened joint committee meetings to ensure each association was acting the same as the other and to prepare for a potential future merger." TAC ¶ 66. The Association Defendants have provided joint services, such as joint caucus dinners, to their members, and have coordinated their marketing efforts and issued promotions "designed to harm Plaintiff." TAC ¶¶ 67-68. They "regularly hold jointly marketed broker summits and symposiums." TAC ¶ 68. The marketing materials often include both association's names, and Sandicor's. *Id.* "Though the billed topics vary widely, nearly all such events include a discussion of 'the other association' [Plaintiff] and its efforts to take 'your [realtor's] data.'" TAC ¶ 68. The events are meant to persuade "brokerages, brokers, and other real estate professionals in San Diego County to cancel their memberships with Plaintiff." TAC ¶ 68. The Association Defendants also allegedly "transfer 'credits' for any dues or fees paid to Plaintiff if the broker leaves Plaintiff and joins PSAR or NSDCAR as their primary membership." TAC ¶ 69.

Plaintiff also alleges, upon information and belief, that the Association Defendants have agreed to align, but to remain technically separate in order to maintain control over Sandicor's board. TAC ¶ 70. Plaintiff alleges the Association Defendants recently "formalized" a "'shared services agreement,' under which 'access to many services, resources, and discounts offered by either Association will not be available to both PSAR and NSDCAR members irrespective of with which association they have their primary membership.'" TAC ¶ 71. According to Defendants' disclosure regarding the agreement, the agreement is an "expansion of a relationship between the two Associations that has been in effect since 2013." *Id.* Such agreements are uncommon, Plaintiff urges, because they require "competing associations to share confidential

membership records" which "could be used to recruit" the other association's members. TAC ¶ 72. For that reason, the Defendants also recently entered into a market allocation agreement, agreeing not to recruit the other's members. *Id.*

Plaintiff further states that Sandicor's governance form facilitated the Association Defendants' collusion and that, upon information and belief, "Sandicor's board members are frequently ordered to vote in a particular way, in concert with the members of the other colluding association." TAC ¶ 76.

Around 2012, in response to Plaintiff's disclosure that it was designing Just Knock, the Association Defendants "attempted to use Sandicor's funds to prepare a 'new' web portal to compete with Just Knock," but Plaintiff protested because Sandicor's sole purpose was to aggregate the data, not use resources to develop products "that compete with Plaintiff for the sole benefit of PSAR and NDSCAR." TAC ¶¶ 81-82. Sandicor's board agreed to pass a resolution amending the bylaws to prohibit Sandicor from offering products and services that would compete with the associations' products and services. *Id.*

In 2013, after Plaintiff had tried unsuccessfully several times to access an unrestricted MLS data feed from Sandicor for Just Knock, Plaintiff attempted to obtain a syndicated Sandicor data feed from a third party, Point2, "who was contractually permitted to re-sell data." TAC ¶ 87. In response, Ray Ewing (Sandicor's CEO and a member of NSDCAR) "contacted Point2 and instructed them to eliminate any data originating from NSDCAR and PSAR's brokers." TAC ¶ 88. He stated that Plaintiff "'was not entitled to any data from us' because the Board of Directors had not authorized it in response to Plaintiff's repeated requests." *Id.* Representatives of each of the Association Defendants also contacted Point2 and "issued independent, but identical instructions to Point2, demanding that they 'block' any listings originating from their members from going to Plaintiff's Just Knock portal." TAC ¶ 89. "Ultimately, PSAR and NSDCAR were successful in preventing Plaintiff from obtaining the essential supply

of information from every legal and/or legitimate source, rendering Plaintiff's new product effectively useless." TAC ¶ 90.

At a board meeting, the chair of Sandicor's board of directors, Aaron Kerper, who is a representative of PSAR, was asked why the board intervened with Plaintiff's relationship with Point2, particularly in light of the fact that Sandicor did not intervene when Point2 provided the same data to the San Diego Union Tribute, a third party. TAC ¶ 92. The chair answered that the difference in treatment is due to the fact that the Union Tribune does not compete with them. *Id.*

As for Plaintiff's injury, the TAC states, Defendants' actions "have stifled Plaintiff's efforts to provide the innovations it has invested time and money developing." TAC ¶ 24. Further, "Plaintiff has lost members and has not obtained new members it would have obtained but for [the Association Defendants' conduct]." *Id.* The Association Defendants' and Ray Ewings' conduct has harmed competition and precluded Plaintiff from effectively competing. *See id.* Plaintiff does not have a reasonable alternative source of the data, as the Defendants have interfered with Plaintiff's ability to obtain the same information from third-parties. *See id.*

Plaintiff's antitrust theory is that the Association Defendants conspired, through their control of Sandicor, to exclude Plaintiff from the market for "real estate listing information, which in turn has prevented Plaintiff from effectively competing in the market for real estate salespersons and broker members." TAC ¶ 25. Defendants purportedly did so because they viewed Plaintiff's innovative and novel platform as a competitive threat. *See id.*

## **LEGAL STANDARD**

Once a district court has established a deadline for amended pleadings, and that deadline has passed, Federal Rule of Civil Procedure 16 provides the legal standard to modify a scheduling order. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson v. Mammoth Recreations*, 975 F.2d 604, 607-08 (9th Cir. 1992). A pretrial scheduling order can only be modified upon a showing of good cause. Fed. R.

Civ. P. 16(b)(4). "Good cause" focuses on the diligence of the party seeking the amendment. *Johnson*, 975 F.2d at 609. The pretrial schedule may be modified "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (citation omitted). In general, the focus of the diligence inquiry is on the time between the moving party's discovery of new facts and its asking leave of the court to file an amended pleading. *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087-88 (9th Cir. 2002). Prejudice to the non-moving party, though not required under Rule 16(b), can supply additional reasons to deny a motion. *Coleman*, 232 F.3d at 1295. If the moving party shows good cause, then the Court applies Federal Rule of Civil Procedure 15 to determine whether the amendment is proper. *Johnson*, 975 F.2d at 608.

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its complaint (i) within 21 days after serving it; (ii) within 21 days after a responsive pleading has been served; or (iii) with the opposing party's written consent or leave of court. Fed. R. Civ. P. 15(a). The United States Supreme Court has stated:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-04000 SC, 2013 WL 1739451, at *3 (N.D. Cal. Apr. 22, 2013) (stating "the Ninth Circuit has stressed Rule 15's policy of favoring amendments").

## DISCUSSION

Plaintiff contends leave to amend is appropriate because it is consistent with Judge Crawford's discovery order, indicating that a motion to amend the complaint should be filed to correct factual inaccuracies. Mtn at 4. Specifically, Plaintiff proposes nine amendments as follows:

(1)     Inserting the allegation that Plaintiff devoted substantial time and resources to create the Just Knock web-portal in 2014, through its wholly owned subsidiary, ReAltitude, LLC and deleting the allegation that Plaintiff began devoting these resources in 2009.  Mtn, Exhibit B ¶ 39.

(2)     Inserting the allegation that "SDAR began devoting substantial resources to the development of Just Knock in 2014, through its then-wholly-owned subsidiary, ReAltitude."  *Id.* ¶ 80.

(3)     Inserting the allegation that Plaintiff ultimately lost hundreds of thousands of dollars spent creating and rolling-out Just Knock "since 2014, both through Plaintiff and its then-wholly-owned subsidiary."  *Id.* ¶ 118(d).

(4)     Deleting the allegation that it "began devoting a substantial portion of its finite resources into the development of" Just Knock, and inserting the allegation that it "formulated the idea for" Just Knock.  *Id.* ¶ 80.

(5)     Deleting the allegation that it disclosed Just Knock to the Association Defendants in "2010."  *Id.* ¶ 81.

(6)     Deleting the allegation that its purpose is not to "devote substantial resources into the development of websites that compete with Plaintiff for the sole benefit of PSAR and NSDCAR," and adding the allegation that its purpose is not to "develop websites and provide basic services for the local associations' members (which, Plaintiff believed, should be the role of the three associations—not the MLS service)."  *Id.* ¶ 82.

(7)     Deleting the allegation that Sandicor's board of directors agreed "in 2012" to discontinue efforts to create a competing web-portal.  *Id.*

(8)     Deleting the allegation replacing "2010" with "2015" as the year Plaintiff began approaching Sandicor with a request for the MLS data feed.  *Id.* ¶ 84.

(9)     Deleting "[i]n or around 2013," and leaving the allegation that "[a]fter its multiple requests to Sandicor had been summarily (and illogically) rejected, Plaintiff attempted a work-around by obtaining a syndicated data feed from a third party . . . ."  *Id.* ¶ 87.

Defendants do not oppose the first three proposed amendments. Ass'n Oppo. at 9; Sandicor Oppo. at 7 (agreeing with the Association Defendants that "six of the nine proposed changes . . . are improper and are not necessary or appropriate"). Because Defendants do not oppose these amendments and because they are consistent with Judge Crawford's discovery order, the Court **GRANTS** Plaintiff leave to amend as to the first three proposed amendments listed above.

1. *Consistency with Judge Crawford's Order*

As a preliminary matter, Plaintiff contends that all of its proposed amendments are consistent with Judge Crawford's order, and therefore, the motion for leave to amend should be granted. Mtn at 4. Defendants assert that the remaining six amendments exceed the scope of Judge Crawford's order. Ass'n Oppo. at 9; Sandicor Oppo. at 2. Judge Crawford's discovery order recommended Plaintiff amend the TAC to clarify that it began devoting substantial resources to Just Knock in 2014, as opposed to 2009, and that it channeled those efforts through ReAltitude, LLC. Doc. No. 78 at 7. Proposed amendments 4 through 9 refer to formulation of Just Knock (proposed amendment 4), disclosure of Just Knock to the Association Defendants (proposed amendment 5), Sandicor's purpose (proposed amendment 6), Sandicor's board of director's decision to discontinue efforts to compete with Just Knock (proposed amendment 7), Plaintiff's request for the MLS data feed (proposed amendment 8), and Plaintiff's attempt to obtain a syndicated data feed from a third party (proposed amendment 9). Mtn, Exhibit B ¶¶ 80-82, 84, 87. As such, the remaining six amendments do exceed the scope of Judge Crawford's order, and Plaintiff may only make those amendments if it satisfies Federal Rules of Civil Procedure 16(b) and 15(a).

2. *Rule 16(b)*

The deadline to amend the pleadings passed nearly four months ago, on July 7, 2017. Doc. No. 75 at 1. Thus, Plaintiff must satisfy Federal Rule of Civil Procedure 16(b)(4) to amend the scheduling order to allow it to file an amended complaint. *See* Fed. R. Civ. P. 16(b)(4). As discussed above, Rule 16(b)(4) requires Plaintiff to show

11

16cv96-MMA (KSC)

good cause exists to amend the scheduling order. *Id.* The moving party shows good cause if the movant was diligent in seeking the modification. *Zivkovic*, 302 F.3d at 1087.

Plaintiff asserts that good cause exists to file an amended complaint because it proceeded diligently and in good faith. Mtn at 5. Specifically, Plaintiff asserts it discovered the factual inaccuracy on August 11, 2017 (two months after the expiration of the deadline to amend the pleadings). *Id.* Plaintiff's counsel researched the issue and confirmed the date in the pleadings was incorrect on August 14, 2017. *Id.* Plaintiff's counsel then called Defendants' counsel on August 16, 2017, and "offered to serve a verified discovery response or declaration to correct the same to resolve the discovery dispute." *Id.* The Association Defendants declined Plaintiff's offer and filed a motion to compel Plaintiff to produce documents based on the allegation that Plaintiff began developing Just Knock in 2009. *Id.* On September 29, 2017, the Court denied the motion and ordered Plaintiff to seek leave to amend the complaint by October 17, 2017. Doc. No. 78 at 10. Plaintiff filed the instant motion for leave to file an amended complaint on October 17, 2017. *See* Mtn. As a result, Plaintiff contends that it has been diligent in correcting the inaccuracy contained in the pleadings by meeting and conferring with Defendants, seeking the Court's assistance in resolving the underlying discovery dispute, and complying with Judge Crawford's discovery order setting forth a deadline to file a motion for leave to amend. *Id.* at 5-6.

Defendants counter that Plaintiff was not diligent with respect to proposed amendments 4 through 9 because they are not related to the underlying discovery dispute. Ass'n Oppo. at 14. Specifically, the Association Defendants claim that amendments 4 through 9 "do not clarify anything about SDAR's purported investment in Just Knock in or around 2014 through ReAltitude LLC." *Id.* at 15. Plaintiff replies that all of the amendments are consistent with the allegation that Plaintiff "did not begin investing in Just Knock until 2014" and that the proposed amendments only state that events relating to disclosure, board of director decisions, securing a new data feed, etc., happened on different date than previously alleged. Reply at 4.

12

16cv96-MMA (KSC)

As discussed previously, the Court disagrees with Plaintiff's argument that proposed amendments 4 through 9 are consistent with the allegation that it did not begin devoting substantial resources to Just Knock until 2014. The Court also disagrees that these amendments are necessarily consistent with the allegation it began investing in Just Knock in 2014. The Court notes that Plaintiff alleges it began devoting *substantial* time and resources to Just Knock in 2014. *See* TAC ¶ 39 (emphasis added). It does not necessarily follow that formulation of Just Knock, disclosure of Just Knock, Sandicor's purpose, Sandicor's board of directors decision to discontinue efforts to compete with Just Knock, Plaintiff's request for the MLS data feed, and Plaintiff's attempt to obtain a syndicated data feed from a third party occurred at a different time than previously alleged. Mtn, Exhibit B ¶¶ 80-82, 84, 87 Plaintiff's diligence argument is predicated on the underlying discovery dispute and Judge Crawford's discovery order, which specified that the factual inaccuracy is limited to the devotion of substantial resources, which was channeled through ReAltitude. *See* Mtn. However, because that factual inaccuracy is not consistent with other allegations Plaintiff seeks to amend, Plaintiff fails to explain how it was diligent in seeking leave to amend those allegations. *Id.* As a result, the Court finds that Plaintiff has not acted diligently, and therefore, has not shown good cause in seeking leave to amend with respect to proposed amendments 4 through 9.

The Court also finds that permitting Plaintiff leave to amend proposed amendments 4 through 9 would be prejudicial to Defendants. While not a requirement under Rule 16(b), prejudice can supply additional reasons to deny a motion for leave to amend. *Coleman*, 232 F.3d at 1295.

Here, Defendants contend the remaining amendments would be unduly prejudicial because it will substantially change Plaintiff's antitrust claims. Ass'n Oppo. at 16-17. The Association Defendants state that they have already sought clarity about what the Just Knock product was, proof of the allegation that SDAR disclosed Just Knock to Association Defendants in 2010, proof of the allegation that Sandicor purportedly developed a web portal for the benefit of Association Defendants and not Plaintiff, proof

of the allegation that Sandicor passed a resolution in 2012, which prohibited it from creating a web portal, and proof that Plaintiff made motions to Sandicor to obtain an MLS data feed. *Id.* at 17. Association Defendants contend that permitting Plaintiff to make the remaining proposed amendments would require a significant amount of additional discovery on aspects they have already pursued and developed defenses to. *Id.* The Association Defendants conclude that proposed amendments 4 through 9 "serves only to shift gears, create obfuscation, and evade positions that SDAR has anchored its case on for close to two years. The amendments would require Association Defendants to spend significant resources in time and money in conducting additional discovery. Further, they may also thwart any legitimate defenses that Association Defendants have already developed over the pendency of the action." *Id.* at 18. Sandicor explains that Plaintiff left all of the substantive allegations of conduct between 2009 (the year Plaintiff originally indicated it began devoting substantial resources to Just Knock) and 2014 (the correct year Plaintiff began devoting resources to Just Knock). Sandicor Oppo. at 3. It contends Plaintiff omits the date of this conduct because those occurrences are "essential to [Plaintiff's] pleading of 'plus factors' on its antitrust claims," and deleting those allegations would open Plaintiff up to the risk of a fatal motion to dismiss. *Id.* Plaintiff replies that these events occurred, just on different dates than previously alleged. Reply at 4.

The Court finds that permitting proposed amendments 4 through 9 would result in prejudice, given that the parties began discovery in June 2017 and the discovery cut-off is on January 19, 2018. Doc. Nos. 75, 86 at 3. In addition, Plaintiff has had multiple opportunities to amend its complaint through multiple rounds of motions to dismiss. *See* Doc. Nos. 13, 14, 24, 26, 40, 54. Plaintiff has taken advantage of those opportunities, as Plaintiff now seeks leave to file a fourth amended complaint. *See* Mtn; *see also* Doc. Nos. 1, 18, 39, 52. Further, as discussed previously, the remaining proposed amendments are unrelated to Judge Crawford's discovery order, which narrowly limited Plaintiff to correcting the year that Plaintiff began devoting substantial resources to Just Knock,

14

which were channeled through ReAltitude. The remaining proposed amendments change the timing of particular events and occurrences, which could unduly prejudice Defendants.

As such, Plaintiff has not established good cause to amend the scheduling order to permit Plaintiff to amend the complaint. Accordingly, the Court **DENIES** Plaintiff leave to amend as to proposed amendments 4 through 9. The Court declines to analyze Federal Rule of Civil Procedure 15(a) in light of its Rule 16(b) finding. *See Benchmark Young Adult Sch., Inc. v. Launchworks Life Servs., LLC*, No. 12-CV-02953, 2014 WL 3014720, at *2 (S.D. Cal. July 3, 2014) (indicating that the Court begins its inquiry with Rule 16(b), and then considers Rule 15 if necessary).

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for leave to amend to file a fourth amended complaint [Doc. No. 79] as follows:

1. The Court **GRANTS** Plaintiff leave to amend with respect to proposed amendments 1 through 3, as listed on page 10 of this Order; and

2. The Court **DENIES** Plaintiff leave to amend with respect to proposed amendments 4 through 9, as listed on page 10 of this Order.

**IT IS FURTHER ORDERED** that Plaintiff file the proposed fourth amended complaint on or before **December 19, 2017**.

**IT IS SO ORDERED**.

Dated: December 12, 2017

Hon. Michael M. Anello
United States District Judge